[No. B082555. Second Dist., Div. Six. July 17, 1995.]

ROBERT FELMLEE, Plaintiff and Appellant, v.
FALCON CABLE TV, Defendant and Appellant.

**COUNSEL**

James R. Murphy, Stephen D. Hamilton and James R. Murphy, Jr., for Plaintiff and Appellant.

Staton & Tomlinson, Mack S. Staton and Will Tomlinson for Defendant and Appellant.

**OPINION**

**GILBERT, J.**—A worker is injured while repairing a cable television line. He sues the general contractor who hired his employer, an independent

contractor, for breach of a nondelegable duty. He asserts that the doctrine of "nondelegable duties" survives *Privette* v. *Superior Court* (1993) 5 Cal.4th 689 [21 Cal.Rptr.2d 72, 854 P.2d 721]. It does. The worker, however, may not state a cause of action unless he can allege the breach of a specific nondelegable duty.

Plaintiff, Robert Felmlee, appeals from the judgment after the special jury verdict in favor of the general contractor, defendant Falcon Cable TV. We conclude that the trial court properly refused to instruct on the doctrine of nondelegable duties and properly instructed the jury that Falcon had no duty to warn him of obvious dangers. Falcon cross-appeals, asserting that the trial court should have granted its motion for nonsuit at the end of Felmlee's case-in-chief. We affirm the judgment.

## FACTS

Falcon owns cable television lines and retained Clark Communications to perform maintenance and repairs on its lines.[1] Clark employed Felmlee to repair and install Falcon's lines.

Clark sent Felmlee out in the field to repair a cable television line which had broken loose from a customer's house. The cable from the house had been attached to a hook inserted into a nearby tree. From the tree, the cable crossed over a street. This portion of the cable is known as a "messenger cable." It was connected to another cable, called a "mid-span," which was strung between two telephone poles. The mid-span and the messenger cable are connected by a "mid-span clamp."

Felmlee decided to re-route the messenger cable from the mid-span clamp to a "jumper pole," so that he could avoid the tree and reconnect the cable line directly to the customer's house. To begin, he had to cut the messenger cable from the mid-span to the tree.

Felmlee hooked his ladder onto the mid-span and climbed the ladder to cut the messenger cable. He draped his right arm over the mid-span and held onto a ladder rung with one hand. At the time, he was approximately 25 feet above the ground. When he cut the messenger cable, the change in the tension on the mid-span caused it to rock back and forth, throwing him off the ladder to the ground and causing him injury.

Felmlee had received minimal safety instruction from Clark, but he had performed about 50 to 70 similar operations in the previous 7 months he had

---

[1]Clark Communications is not a party to this appeal.

worked for Clark. He knew he had to hang onto the ladder due to the change in tension which occurs when such lines are cut. When he checked the tension on the messenger cable, it did not seem to be any greater than usual. He never used a safety belt while working for Clark, including the day of the accident. A safety belt probably would have prevented him from falling from the ladder to the ground.

Felmlee filed the instant suit against Falcon. His theory was that Falcon was responsible for his injuries because it improperly allowed overtensioning of the line and because it failed to assure that he was properly instructed on safety precautions such as the use of a safety belt. After Felmlee presented his case-in-chief, Falcon moved for nonsuit on the ground there was insufficient evidence of Falcon's negligence or because *Privette* precluded suits premised on the "peculiar risk doctrine." The peculiar risk doctrine provides that a general contractor may be vicariously liable for dangerous risks inherent in the work. (*Privette* v. *Superior Court, supra*, 5 Cal.4th at p. 691.) The trial court denied the motion.

Felmlee asserted that Falcon had nondelegable duties to adhere to certain Public Utility Commission rules and to a county ordinance regarding industry standards and the maintenance of safe working conditions.

■ A nondelegable duty is a definite affirmative duty the law imposes on one by reason of his or her relationship with others. One cannot escape this duty by entrusting it to an independent contractor. (*Snyder* v. *Southern Cal. Edison Co.* (1955) 44 Cal.2d 793, 800 [285 P.2d 912].) Felmlee requested a negligence per se jury instruction regarding this duty.

The trial court refused to so instruct. It determined there was no liability under the doctrine of nondelegable duties pursuant to *Privette*, and that Felmlee was only entitled to the exclusive remedy of workers' compensation.

The case went to the jury on general negligence principles. By a 10-to-2 vote, the jury returned a special verdict in favor of Falcon. After the trial court denied Felmlee's motion for new trial, he appealed from the judgment. Falcon cross-appealed, asserting that Felmlee's suit was barred by *Privette* and that no substantial evidence of negligence was presented as to Falcon.

### DISCUSSION

■ Felmlee contends that the trial court erred in refusing to give BAJI No. 13.22 as follows: "A defendant who by ordinance and safety order, such

as San Luis Obispo County Ordinance 1202 or Rules 11, 13, 31.1, 31.2 or 35 of General Order 95, as just read to you, is under a duty to provide specified safeguards or precautions or to maintain certain equipment in a specified condition, is liable for harm caused to others by the omission of a contractor employed by such defendant to provide such safeguards or precautions or by the failure of such contractor to put such equipment in the condition so required.

"Thus, if you find that the contractor employed by the defendant omitted to provide the specified safeguards or precautions or failed to put defendant's equipment in the condition required and that such omission or failure was a cause of plaintiff's injury, you will find that defendant is liable for plaintiff's injury unless defendant proves by a preponderance of the evidence that such omission or failure was not due to any negligence on the part of such contractor."

Section 12 of San Luis Obispo County Ordinance No. 1202 states, in pertinent part that "[t]he grantee [here, Falcon] shall be responsible for the installation, operation, and maintenance of the CSTV system in accordance with the highest standards of the industry . . . ." Rule 31.1 of General Order No. 95 of the Public Utilities Commission, for example, concerns the responsibility of utilities to reduce the hazard of accidental injuries to their employees and to prevent conditions which are unusually dangerous to workers who perform work on public streets.

 Falcon opines that the trial court should have granted its motion for nonsuit because *Privette* precludes liability for nondelegable duties, and because there is no substantial evidence of negligence by Falcon. (Code Civ. Proc., § 581c.) The trial court did not err in denying the motion for nonsuit. There existed sufficient evidence of negligence on the part of Falcon to permit that issue to go to the jury. (See *Nally* v. *Grace Community Church* (1988) 47 Cal.3d 278, 291 [253 Cal.Rptr. 97, 763 P.2d 948]; *Estate of Callahan* (1967) 67 Cal.2d 609 [63 Cal.Rptr. 277, 432 P.2d 965].) *Privette*, however, did not discuss nondelegable duties. We consider the merits of the respective appeals.

 In *Privette*, an owner of a duplex hired an independent roofing contractor to install a new roof. An employee of the contractor was injured while carrying out the direction of his foreman to carry buckets of hot tar up a ladder to the roof. The employee sought workers' compensation benefits and sued the owner of the duplex for negligently hiring the contractor. He also sued for peculiar risk because of the inherent danger of working with hot tar in the roofing business. The *Privette* court held that when an

employee of an independent contractor suffers injuries which are subject to workers' compensation coverage, and which result from the performance of inherently dangerous work, the employee may not also seek tort damages from the owner or the general contractor. (*Privette* v. *Superior Court, supra,* 5 Cal.4th at p. 702.)

The workers' compensation system shields these parties from such actions. (*Privette* v. *Superior Court, supra,* 5 Cal.4th at p. 701; Lab. Code, § 3864.) That is because the workers' compensation scheme operates regardless of fault and achieves the identical purposes that underlie recovery under the peculiar risk doctrine by ensuring swift, sure compensation for workplace injuries. (*Privette, supra,* at p. 697.) The system spreads such risks and the associated costs of insurance provided in exchange for swift settlements to workers regardless of fault. (*Ibid.*; cf. *Gamboa* v. *Conti Trucking, Inc.* (1993) 19 Cal.App.4th 663 [23 Cal.Rptr.2d 564], in which trucking company, a common carrier, held liable on grounds of nondelegable duty for injury to third party motorist.)

The holding of *Privette* precludes actions only under the peculiar risk doctrine. It does not discuss the doctrine of nondelegable duty. In *Srithong* v. *Total Investment Co.* (1994) 23 Cal.App.4th 721 [28 Cal.Rptr.2d 672], the appellate court explained, in dicta, that both the doctrines of peculiar risk and nondelegable duty are forms of vicarious liability which operate without consideration of fault. (*Id.* at pp. 725-727.) "[T]he nondelegable duty rule advances the same purposes as other forms of vicarious liability." (*Id.* at p. 727.) Vicarious liability concerns the principle of assuring that compensation is available to those who become injured. It operates by placing the risk of damage awards on those most able to pay by dint of status or relationship. In the case of an injury to a lessee, as in *Srithong,* that policy is served by requiring the landlord to pay damage awards for negligence caused by those he or she hires. (*Id.* at p. 728.)

*Privette* does not purport to abolish all forms of vicarious liability in general, or the doctrine of nondelegable duty in particular, as a basis for suits by employees of contractors against the contractors' employer. ██ Cases are not authority for propositions not discussed. (*Carleton* v. *Tortosa* (1993) 14 Cal.App.4th 745, 757, fn. 4 [17 Cal.Rptr.2d 734].) ██ Although an injured worker who obtains workers' compensation may not sue a general contractor for a peculiar risk, such a worker may sue the general contractor for specific, nondelegable duties in certain cases.

Nondelegable duties may arise when a statute provides specific safeguards or precautions to insure the safety of others. (See *Maloney* v. *Rath* (1968) 69

Cal.2d 442, 448 [71 Cal.Rptr. 897, 445 P.2d 513, 40 A.L.R.3d 1].) But the ordinance in question here does not concern *specific* safeguards. (Cf. *Snyder* v. *Superior Court*, *supra*, 44 Cal.2d 793, 795, 800 [violation of a specific rule under General Order No. 95 to sink utility poles six and one-half feet into the ground constitutes a specific, well-defined, affirmative nondelegable duty].)

As Falcon points out, the ordinances and rules at issue here do not specifically require a cable operator to insure that its independent contractor's employees wear safety belts or harnesses. The ordinance requires the cable company to maintain good service. The rule of the general order of the Public Utilities Commission speaks to a general duty of a cable operator to maintain safe conditions for its employees. These broad provisions do not give rise to an action for breach of a nondelegable duty.

■ The trial court also properly barred the introduction of other certain nondelegable duties, contained in California Occupational Safety and Health Administration (CAL-OSHA) regulations. Labor Code section 6304.5 states, in pertinent part, "Neither this division [division 5 of the Labor Code, entitled "safety in equipment"] nor any part of this division shall have any application to, nor be considered in, nor be admissible into, evidence in any personal injury . . . action . . . , except as between an employee and his own employer." (See *Spencer* v. *G.A. MacDonald Constr. Co.* (1976) 63 Cal.App.3d 836, 857-858 [134 Cal.Rptr. 78]; *Widson* v. *International Harvester Co.* (1984) 153 Cal.App.3d 45, 51-52 [200 Cal.Rptr. 136]; *Salinero* v. *Pon* (1981) 124 Cal.App.3d 120, 130-131 [177 Cal.Rptr. 204].)

## DUTY TO WARN

■ Felmlee also contends that the trial court improperly instructed the jury that Falcon had no duty to warn him of obvious dangers. We disagree. The trial court gave the following special instruction pursuant to *Elder* v. *Pacific Tel. & Tel. Co.* (1977) 66 Cal.App.3d 650 [136 Cal.Rptr. 203]: "Falcon TV owed no duty to warn plaintiff of a danger which was obvious or which should have been observed in the exercise of ordinary care." Felmlee's reliance on the case of *Osborn* v. *Mission Ready Mix* (1990) 224 Cal.App.3d 104 [273 Cal.Rptr. 457] is misplaced.

In *Osborn*, a worker tripped and fell on some rubble at a delivery site. The trial court instructed the jury that " '[i]t is also the duty of the proprietor to warn such employees of any danger which is not obvious and which is known to the proprietor or discoverable by it in the exercise of ordinary care. *However, a business proprietor is not the insurer of the safety of the employees of a supplier and cannot be held liable for an injury resulting from a*

*danger which was obvious or which should have been observed in the exercise of ordinary care.* If a danger is open and obvious, the business proprietor is not charged with a duty to warn employees of a supplier who come on its premises.' (Italics added.)" (*Osborn* v. *Mission Ready Mix, supra,* 224 Cal.App.3d at p. 115.)

The appellate court found this instruction objectionable because it was too broad. It is incorrect to instruct a jury categorically that a business owner cannot be held liable for an injury resulting from an obvious danger. (*Osborn* v. *Mission Ready Mix, supra,* 224 Cal.App.3d at p. 116.) There may be a duty to remedy a dangerous condition, even though there is no duty to warn thereof, if the condition is foreseeable. (*Id.* at pp. 121-122.)

The error made in *Osborn* was not made by the trial court in the instant case. The instruction given here, as in *Elder,* only states that Falcon had no duty *to warn* of obvious dangers, not that Falcon could not be held liable for any injury which results from any obvious, dangerous condition under any theory. ██ ██ The jury was free to consider whether Falcon was directly negligent in failing to correct any foreseeable, dangerous condition of the cables which may have contributed to the cause of Felmlee's injuries.

The judgment is affirmed. Costs to defendant and appellant.

Stone (S. J.), P. J., and Yegan, J., concurred.