**Cheryl Marie McLANDRICH, et al., Plaintiffs,**

v.

**SOUTHERN CALIFORNIA EDISON COMPANY, San Diego Gas & Electric, Combustion Engineering, et al., Defendants.**

**Civil No. 95-0151.**

United States District Court, S.D. California.

July 29, 1996.

David Ringwood, Howarth & Smith, Los Angeles, CA, for plaintiffs.

Ned Isokawa, Crosby, Heafey, Roach & May, Oakland, CA, for defendant SDG & E.

Janice Brown, Seltzer, Caplan & Wilkins & McMahon, San Diego, CA, for defendant INPO.

## ORDER DENYING DEFENDANT INSTITUTE OF NUCLEAR POWER OPERATIONS' MOTION TO REFER TO THE NUCLEAR REGULATORY COMMISSION; DENYING DEFENDANT SAN DIEGO GAS & ELECTRIC'S MOTION FOR SUMMARY JUDGMENT; AND CERTIFYING THE CASE FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)

BREWSTER, District Judge.

The parties in the above-captioned case came before this Court on July 15, 1996 to consider defendant Institute of Nuclear Power Operations' ("INPO") motion to reconsider this Court's earlier order denying INPO's request to refer the case to the Nuclear Regulatory Commission ("NRC") and for continuing argument on defendant San Diego Gas & Electric's ("SDGE") motion for summary judgment. David Ringwood, Esq. appeared on behalf of plaintiff Cheryl McLandrich. Janice Brown, Esq. and Jim Miller, Esq. appeared on behalf of defendant INPO. Ned Isokawa, Esq. appeared on behalf of defendant SDGE. · Having carefully considered the papers submitted and the oral arguments offered by all parties, the Court hereby GRANTS defendant INPO's motion for reconsideration and AFFIRMS its earlier order denying the motion to refer the matter to the NRC. The Court also DENIES defendant SDGE's motion for summary judgment. Finally, the Court also GRANTS INPO and SDGE's requests to certify the case for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## I. BACKGROUND

### A. Factual Background

This case arises out of events at the San Onofre Nuclear Generating Station ("SONGS") where Greogory McLandrich, plaintiff's decedent, was employed as a nuclear engineer from 1973 to 1990. (Second Amended Complaint ("SAC") ¶ 19.) Southern California Edison ("SCE"), SDGE, ·the City of Riverside and the City of Anaheim are co-owners of SONGS. SCE manages the daily operation of SONGS pursuant to a Joint Operating Agreement among the co-owners. Allegedly, defendants, during the period of decedent's employment allowed dangerous levels of radiation to escape into areas of SONGS where employees worked, including Mr. McLandrich. (SAC ¶ 20–22.) Defendant Combustion Engineering allegedly manufactured defective nuclear fuel rods and the other defendants knowingly kept these fuel rods in service despite the presence of "fuel fleas" (leaks of irradiated fuel fragments) in the air at SONGS and on workers' protective clothing. (SAC ¶¶ 23, 24.) Plaintiff alleges further that detection, monitoring and documentation of radiation exposure at SONGS were seriously flawed, and that dosimetry badges worn by workers were defective. (SAC ¶¶ 28–29.) Plaintiff asserts that defendants knew or should have known of the hazardous conditions at the plant, but did not correct the problems or warn Mr. McLandrich. (SAC ¶ 32.) Moreover, plaintiff avers that defendants told Mr. McLandrich that his radiation dose levels and contamination exposures were low and below safety guidelines. (SAC ¶ 34.)

INPO is an independent organization funded by the nuclear power industry whose members include the owners and operators of licensed nuclear power plants. INPO generally coordinates the activities of its members with respect to operational policies, including policies regarding the recording of radiation levels and the reporting of radiation exposure to plant workers. INPO has a formal ·arrangement with the NRC, called a "Coordination Plan," under which INPO and the NRC, recognizing "the existence of mutually compatible objectives reflecting concerns

for the radiological protection of individuals who work at nuclear power plants," have agreed "to coordinate selected NRC and INPO utility radiological protection activities." Plaintiff alleges that INPO engaged in a conspiracy with SCE and SDGE to fraudulently misrepresent radiation exposures at SONGS and deceive workers, the public and the NRC. (SAC ¶ 31.)

Defendants were allegedly aware of the effects of radiation exposure and knew that Mr. McLandrich had been exposed to excessive levels of radiation, that he had suffered an injury and that the injury resulted from excessive radiation exposure. (SAC ¶ 34.) Defendants' knowing failure to inform Mr. McLandrich of his radiation exposure allegedly aggravated his injury as he was unable to properly seek treatment and his exposure to excessive radiation continued. (SAC ¶ 35.)

During the mid to late 1980s, Mr. McLandrich developed severe stomach pains for which he could not obtain a diagnosis. (SAC ¶ 35.) Mr. McLandrich was diagnosed in August, 1989, with leiomyosarcoma, a rare form of soft tissue cancer of the abdomen. He died in or around November 1990.

## B. Procedural Background

Plaintiffs, Cheryl and Paul McLandrich, by and through their guardian ad litem, Linda McLandrich filed their original complaint on February 6, 1995 stating among other things a claim for the wrongful death of their father, Gregory McLandrich. On April 3, 1995, United States District Judge Napoleon A. Jones, Jr. granted defendants' motion to dismiss as to counts 1–14 of the original complaint, leaving only the claim for wrongful death. Judge Jones also ruled that decedent's wife, not the children, was the real party in interest where only the wife, as trustee of decedent's estate, could bring the estate's cause of action.[1] Defendants answered plaintiff's complaint on April 20, 1995.[2]

This Court has had these parties before it on several occasions. On November 27, 1995, this Court granted SCE's motion for summary judgment on the basis of workers' compensation exclusivity. The Court simultaneously denied SDGE's similar motion for summary judgment, instead granting, *sua sponte*, summary adjudication in favor of plaintiff that SDGE is not a joint employer for the purposes of the workers' compensation laws and thus is not protected by the exclusivity rule. SDGE and Combustion Engineering then filed answers to the First Amended Complaint ("FAC"). SDGE filed a motion to reconsider the Court's earlier *sua sponte* grant of summary adjudication against it. After a hearing on January 22, 1996, this Court affirmed its prior ruling denying SDGE's motion for summary judgment and granting summary adjudication in favor of plaintiffs. At the motion for reconsideration, SDGE raised, for the first time, the argument that it was shielded from liability under the holding of *Privette v. Superior Court,* 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721 (1993). The Court determined that considering an issue newly raised by the parties in a motion for reconsideration would be inappropriate but left open to the defendant the opportunity to bring a subsequent motion for summary judgment based on that argument. The Court upheld its finding that SDGE was not a "joint employer." On March 20, 1996, this Court heard oral argument on SDGE's new motion for summary judgment based on the application of the rule announced in *Privette* to the case at bar. The Court, during oral argument, suggested that this case might be effected by the state law doctrine of "ultrahazardous activities," requested that the parties submit additional briefing addressing that issue and scheduled further oral argument which was heard on July 15, 1996. The Court did not rule on the motion for summary judgment at that time. The Court has now received the supplemental briefing and heard the oral argument related to that issue.

The procedural history with regard to INPO is also extensive. On October 10, 1995, this Court granted plaintiff's motion for leave to amend to add INPO as an additional defendant. Plaintiff filed her FAC on Octo-

---

1. Hereinafter "plaintiff" will refer only to decedent's wife.

2. Judge Jones subsequently recused himself from the case and it was transferred to this Court.

ber 16, 1995, which contained allegations against INPO. Defendant INPO then brought a motion to refer the matter to the NRC, which was heard by the Court on December 11, 1995. At that hearing the Court determined that plaintiff had not clearly stated a claim for relief against INPO and thus *sua sponte* dismissed plaintiff's complaint against INPO with leave to amend. The Court then dismissed INPO's motion for a referral to the NRC as moot. Plaintiff then filed the Second Amended Complaint ("SAC") renewing and reframing its allegations against INPO. INPO again moved to have the matter referred to the NRC. On March 11, 1996, this Court held a hearing on that motion, and denied INPO's request for referral. INPO now asks the Court to reconsider that decision.

## II.  STANDARDS OF LAW

### A.  Motion for Reconsideration

■ On a motion to reconsider, relief should be granted only "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or [its] initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993), *cert. denied*, — U.S. —, 114 S.Ct. 2742, 129 L.Ed.2d 861 (1994).

INPO requests reconsideration here on the grounds that this Court's earlier ruling was based on clear error. There has been no intervening change in the law and INPO has offered no new evidence to the Court.

### B.  Motion for Summary Judgment

On a motion for summary judgment pursuant to Fed.R.Civ.P. 56, the moving party must first establish that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *British Airways Board v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *reh'g den.*, 441 U.S. 968, 99 S.Ct. 2420, 60 L.Ed.2d 1074 (1979). Summary judgment must be granted if the party responding to the motion fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Although the moving party has the initial burden of demonstrating that summary judgment is proper, that burden may be discharged by pointing out to the court an absence of facts to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. at 2553. The moving party is not required to produce evidence showing the absence of a genuine issue of material fact on such issues, nor must the moving party support its motion with evidence negating the nonmoving party's claim. *United Steelworkers of America, et. al. v. Phelps Dodge, et al.*, 865 F.2d 1539, 1542 (9th Cir.1989), *cert. denied*, 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989).

The burden then shifts to the nonmoving party to show that summary judgment is not appropriate. *Celotex*, at 324, 106 S.Ct. at 2553. To make such a showing, the nonmoving party must go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial. *Id.* Such evidence need not be in a form admissible at trial to avoid summary judgment. *Id.*

## III.  DISCUSSION

### A.  INPO'S Motion for Reconsideration

■ INPO argues here, as it did in its original motion, that plaintiffs case against it should be referred to the NRC pursuant to the doctrine of "primary jurisdiction." "Primary jurisdiction" is an administrative law doctrine whereby a court stays its own proceedings and refers to the relevant administrative agency issues resting within that agency's special expertise for initial determination. *Reiter v. Cooper*, 507 U.S. 258, 267, 113 S.Ct. 1213, 1220, 122 L.Ed.2d 604 (1993).

The Ninth Circuit has adopted a four-part test for determining primary jurisdiction: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *U.S. v. General Dynamics*, 828 F.2d 1356,

1362 (9th Cir.1987); *Cal–Almond Inc. v. Dept. of Agriculture,* 67 F.3d 874, 882 (9th Cir.1995).

In its earlier order, this Court denied INPO's motion for referral of the matter to the NRC on the grounds that plaintiff's claims against the INPO did not raise issues which required the technical expertise of the NRC to resolve and that uniformity concerns were not triggered because plaintiff's allegations were limited to INPO's activities at SONGS.

■ Here, as before, plaintiff is adamant that her claims against INPO are limited to allegations that: (1) INPO knew that decedent was being exposed to radiation levels that were not being reported to him and (2) INPO counseled SDGE and SCE to conceal that information from decedent. Having strenuously argued as to these limitations at oral argument, plaintiff will be restricted at trial to the presentation of evidence which relates to such knowing fraud on the part of INPO. The Court, having accepted plaintiff's framing and limitation of the claims she makes against INPO, finds that these are not issues which will require the expertise of the NRC. The Court will not, at trial, be asked to determine whether the NRC regulations or guidelines are sufficient to provide adequate protection to workers. Rather, the Court will be asked to consider only whether or not there was fraudulent behavior on the part of INPO which resulted in misrepresentations to decedent. The Court finds that this is an issue within the traditional purview of judicial expertise and therefore does not meet the *General Dynamics* test for invoking "primary jurisdiction." The Court thus GRANTS INPO's motion for reconsideration and AFFIRMS the earlier denial of the motion to refer the matter to the NRC.

## B. SDGE's Motion for Summary Judgment

SDGE has requested that this Court grant summary judgment in its favor, relieving it from liability to plaintiff. Any discussion of SDGE's liability here must begin with the Price Anderson Act, which governs public liability for nuclear power incidents.[3] The Price–Anderson Act, 42 U.S.C. § 2014(hh), in relevant part, provides that:

> A public liability action shall be deemed to be an action arising under section 2210 of this title, and the substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident occurs, unless such law is inconsistent with the provisions of such section.

This statutory provision has generally been interpreted to provide that while any claim for damages arising from a nuclear incident must be brought exclusively in federal court, liability will be determined according to the substantive law of the relevant state. *Bohrmann v. Maine Yankee Atomic Pwr. Co.,* 926 F.Supp. 211 (D.Maine 1996). Thus, the Court must begin its analysis here by looking to state law.

### 1. The *Privette* doctrine

■ SDGE requests that the Court grant summary judgment in its favor on the grounds that it is protected from liability under the state law doctrine found in *Privette v. Superior Court,* 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721 (1993). The holding in *Privette* concerned the scope of the "peculiar risk" doctrine under California

---

**3.** 42 U.S.C. § 2014(w) defines "public liability" as "any legal liability arising out of or resulting from a nuclear incident or precautionary evacuation . . . except: (i) claims under State or Federal workmen's compensation acts of employees of persons indemnified who are employed at the site of and in connection with the activity where the nuclear incident occurs. . . ." The term "nuclear incident" is then defined as, "any occurrence, including an extraordinary nuclear occurrence, within the United States causing, within or outside the United States, bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting form the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material . . ." 42 U.S.C. § 2014(q). The Court has previously determined that SDGE is not an "employer" for the purposes of the workmen's compensation laws. Thus, for purposes of determining SDGE's liability, the situation involved in the case at bar involves "public liability." *See also, O'Conner v. Commonwealth Edison Co.,* 13 F.3d 1090 (7th Cir.1994) (applying "public liability" analysis to action by employee of subcontractor performing work at a nuclear power plant).

law. Under the "peculiar risk" doctrine, a person who hires an independent contractor to perform inherently dangerous work may be vicariously liable in tort when the contractor's performance causes injury to others. In *Woolen v. Aerojet General Corp.*, 57 Cal.2d 407, 20 Cal.Rptr. 12, 369 P.2d 708 (1962), the Supreme Court extended the peculiar risk doctrine to employees of the independent contractor, so that the employees could sue the hiring owner if the owner was engaging in activities which presented a "peculiar risk" to the community. In *Privette v. Superior Court*, 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721 (1993), the California Supreme Court reversed the *Woolen* decision, and held that under the peculiar risk doctrine, liability for injuries to an employee of an independent contractor does *not* extend to the property owner who had hired the independent contractor to do inherently dangerous work. In announcing its new rule, the *Privette* court held that:

> When, as here, the injuries resulting from an independent contractor's performance of inherently dangerous work are to an employee of the contractor, and thus subject to worker's compensation coverage, the doctrine of peculiar risk affords no basis for the employee to seek recovery of tort damages from the person who hired the contractor but did not cause the injuries.

*Privette*, 5 Cal.4th at 702, 21 Cal.Rptr.2d 72, 854 P.2d 721. SDGE argues that under *Privette*, it is not liable for the injuries to decedent, who was an employee of an independent contractor, SCE.

Since the 1993 ruling in the *Privette* case, several California courts have articulated exceptions to the *Privette* doctrine which give injured employees a right of action against the hiring owner of an independent contractor in certain circumstances. Despite SDGE's urging that these exceptions would not be followed by the Supreme Court of California, this Court finds that these exceptions, articulated by the lower California courts and by the Ninth Circuit, are viable and should be followed if applicable to the case at bar. The Court reaches this conclusion based on its finding that the holdings in these cases are consistent with both *Privette* and with other state law doctrines.

### a. Non-delegable duties

In *Felmlee v. Falcon Cable TV*, 36 Cal. App.4th 1032, 43 Cal.Rptr.2d 158 (1995), the court held that the doctrine of non-delegable duties survives *Privette* so that an owner who hires an independent contractor may still be liable for breach of a non-delegable duty.[4] The court found

> *Privette* does not purport to abolish all forms of vicarious liability in general, or the doctrine of nondelegable duty in particular, as a basis for suits by employees of contractors against the contractors' employer.

*Id.*, 43 Cal.Rptr.2d at 162. The *Felmlee* court reached this conclusion because it found that, "one cannot escape this [nondelegable] duty by entrusting it to an independent contractor." *Id.* at 160 (citing *Snyder v. Southern Cal. Edison Co.*, 44 Cal.2d 793, 800, 285 P.2d 912 (1955)). The *Felmlee* holding serves to ensure that the *Privette* doctrine does not overwhelm other important state and federal laws which may take precedence; the *Felmlee* case simply stands for the proposition that if an owner is burdened with a special duty of care imposed upon him by a regulation or another rule of law, he cannot avoid that duty by hiring an independent contractor.

In the case at bar, Congress and the NRC have placed special regulatory duties on owners, operators, and licensees of nuclear power plants to adhere to strict safety measures designed to minimize the risks imposed on society by the development of the nuclear power industry. Part and parcel of these regulations are the numerical dose limits which carefully define a licensee's duties regarding the radiation exposure to people working on its facility. The Court finds that, as a matter of law, these duties are nondelegable and that SDGE, as an owner and licensee at SONGS, could not avoid its responsibility to ensure that the dose limits at

---

4. The court defined a "non-delegable duty" as, "a definite affirmative duty the law imposes on one by reason of his or her relationship with others." *Felmlee*, 43 Cal.Rptr.2d at 160.

SONGS were met by hiring SCE as an independent contractor to run the plant. Thus, the Court finds that the *Felmlee* exception to the *Privette* rule applies here, such that SDGE is not shielded from liability. The Court therefore DENIES SDGE's motion for summary judgment and finds that SDGE would be liable for any exposures in excess of those dose limits.

### b. Direct "Control" Liability

■ The second of the exceptions to the *Privette* doctrine relevant here is based on an owners' direct liability for its own negligence. In *Yanez v. United States,* 63 F.3d 870 (9th Cir.1995), the Ninth Circuit, interpreting California law, found that, even after *Privette,* an injured employee of an independent contractor may sue the party hiring that contractor if the hiring party had "actual knowledge of safety violations and the dangers posed by those violations yet failed to exercise [its] right under the contract to correct them." *Yanez,* 63 F.3d at 875. The Court finds that the *Yanez* decision arises from the *Privette* holding itself. In *Privette,* the court specifically sought to protect hiring owners who "did not cause the injuries." *Privette,* 5 Cal.4th at 702, 21 Cal.Rptr.2d 72, 854 P.2d 721. The holding in *Yanez* simply gives life to the flip-side of this phrase: a hiring owner who is the cause of the employee's injuries because it maintained control over the project, knew of potentially dangerous situations or policies, and failed to exercise its control to minimize the risk to the employee may be liable for his injuries.[5] *See also, Owens v. Giannetta–Heinrich Const. Co.,* 23 Cal.App.4th 1662, 1670, 29 Cal.

Rptr.2d 11 (1994) (preserving potential direct liability of the hiring owner after *Privette*).

Plaintiff here has alleged that while SCE may have undertaken more responsibility for the day-to-day operations at the site, SDGE maintained control over the policies and larger operations of the facility.[6] Plaintiff further alleges that SDGE, in conjunction with SCE, knew of the dangers the plant posed to decedent's health and yet did not act to eliminate or minimize those dangers. (SAC ¶¶ 25, 31, 32, 34, 39, 41, 44, 47.) Such a situation, if true, might establish liability pursuant to the control exception to *Privette.* The Court finds that there is a material issue of fact as to whether SDGE maintained sufficient control over the operations and exercised (or failed to exercise) that control in a way that would make it directly liable for the injuries to plaintiff. Thus, even in the event that the non-delegable duty doctrine did not apply to prevent application of the *Privette* rule to the case at bar, summary judgment for SDGE would still be inappropriate. The Court notes, however, that unlike with the non-delegable duty doctrine, under which the Court finds as a matter of law that SDGE is liable for exposures in excess of the regulatory numerical dose limits, under the *Yanez* rule, SDGE would still have the opportunity to show, at trial, that it failed to exercise sufficient control over the operations at SONGS to be directly liable for decedent's injuries.

### 2. Preemption under the Price–Anderson Act

■ In sum, the Court finds that, under state law, SDGE is not shielded by the holding of *Privette* because the doctrine of non-

---

**5.** SDGE here has argued that this Court, because it has already found that SDGE was not a "joint employer" for purposes of workers' compensation exclusivity, cannot now find that SDGE maintained enough "control" to be directly liable for its actions in conjunction with the operation of SONGS. The Court does not find an inconsistency in these two positions. While SDGE, by hiring SCE as an independent contractor, may not have maintained sufficient control of *hiring decisions* and employee control to be considered a joint employer of decedent, this finding does not automatically lead to the conclusion that SDGE was so absent from policy-making at SONGS that it bears no responsibility for the harm those policies may have wrought on indi-

viduals employed at SONGS. *See, e.g., Smith v. ACandS,* 31 Cal.App.4th 77, 37 Cal.Rptr.2d 457 (1994) (finding liability for hiring owner under a direct liability theory but finding that defendant was not an "employer.")

**6.** Plaintiff points to the Joint Operating Agreement and its amending documents, which provide for SDGE representation on a "Board of Review" which will "jointly make the policy determinations." (Second Amended Operating Agreement ("SAOA") § 6.1.) Any policy decisions, according to the agreement, must be approved by a unanimous Board. (SAOA § 6.2.3.)

delegable duties survives the *Privette* decision; SDGE had non-delegable duties to decedent, and thus summary judgment in its favor would be inappropriate. In the alternative, the Court finds that summary judgment would be inappropriate because there is a material issue of fact as to the sufficiency of SDGE's control over the operations at SONGS.

Having determined the matter under state law, the Court must now, in accordance with the dictates of the Price–Anderson Act, consider whether or not the state law rule is "inconsistent" with the Price–Anderson Act; if it is not inconsistent, then the state law rule will apply. If, however, state law is inconsistent with the Price–Anderson Act, it will be preempted.[7]

Other courts have already addressed issues of preemption under the Price–Anderson Act, providing this Court with guidance on the matter at hand. In *In re TMI*, 67 F.3d 1103, 1113–14 (3d Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1034, 134 L.Ed.2d 111 (1996) and *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090 (7th Cir.1994), *cert. denied,* —— U.S. ——, 114 S.Ct. 2711, 129 L.Ed.2d 838 (1994), the Third and Seventh Circuits held that federal law would preempt state law with respect to the standard of care. In both cases, the court found that while the plaintiffs were proceeding under a state law cause of action, negligence, the standard of care which would be used to determine whether or not defendants had indeed acted negligently would be

determined by looking to the federal regulations and the numerical dose limits contained therein. The *O'Conner* court reached this conclusion by reasoning that federal law had preempted state law with regard to "nuclear safety" standards. *O'Conner*, 13 F.3d at 1105.[8] Those courts similarly went on to find not only that the federal regulations would determine the standard of care, but also that if plaintiff presented evidence that the numerical standards had been violated, such proof would establish the negligence of the defendant as a matter of law. *Id.; In re TMI*, 67 F.3d at 1117–18.

The federal courts have also found that applying a strict liability standard would be inconsistent because it would serve to impose liability without requiring plaintiff to prove a violation of the regulations. *Bohrmann*, 926 F.Supp. at 218. In sum, the courts have found that with respect to the standard of care leading to liability, state law cannot be followed to the extent that it gives either more or less protection to defendants than do the regulations. This conclusion appears driven by the acknowledgement that the federal regulations represent the expert determination by the federal government of what level of risk society should bear in exchange for the needed development of nuclear energy. *O'Conner*, 13 F.3d at 1095–96, 1104 (discussing deference to Congressional policy); *In re TMI*, 67 F.3d at 1106–07, 1115 (discussing Congressional balancing resulting in the regulations). The statute itself indicates that Congress intended to, "protect the public and

---

7. The parties, at the request of the Court, presented briefing to the Court regarding whether the operation of a nuclear power plant constitutes an "ultrahazardous" activity under California law. While the Court is inclined to believe that nuclear power plants are "ultrahazardous," the Court notes the general reluctance of the judiciary to make that ruling definitive. *See, e.g., Silkwood v. Kerr–McGee Corp.*, 667 F.2d 908, 921 (10th Cir.1981), *rev'd on other grounds,* 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984); *Carolina Environmental Study Group, Inc. v. United States Atomic Energy Commission*, 431 F.Supp. 203, 224 (W.D.N.C.1977), *rev'd, Duke Power Co. v. Carolina Env. Study Gp.*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978). The Court finds that applying the "ultrahazardous activities" doctrine here would be clearly inconsistent with the Price–Anderson Act, as it would make nuclear power plant licensees strictly liable without the

"safe haven" provided by the dose limits regulations. Because the "ultrahazardous activities" doctrine is inconsistent with the Price–Anderson Act, it is preempted here. As the Court finds that the application of the "ultrahazardous" doctrine would be inappropriate here due to preemption, the Court declines to forge new ground at this juncture by labeling nuclear power generation as an "ultrahazardous activity."

8. The *O'Conner* court found that:

"the field of nuclear safety has been occupied by federal regulation; there is no room for state law. Consequently, 'states are preempted from imposing a non-federal duty in tort, because any state duty would infringe upon pervasive federal safety regulations in the field of nuclear safety, and thus would conflict with federal law.'" *O'Conner*, 13 F.3d at 1105.

to encourage the development of the atomic energy industry, in the interest of the general welfare and of the common defense and security ..." 42 U.S.C. § 2012(i).[9]

The Court finds that if the *Felmlee* rule is viable here, then state law would not be inconsistent with the Price–Anderson Act; the non-delegable duties rule acts to incorporate the federal regulatory safety standards and thus can apply without offense to the federal statute.

If, however, the Court were incorrect about its application of the non-delegable duties doctrine in the face of the *Privette* ruling, the Court finds that state law would conflict with the Price–Anderson Act. This inconsistency could arise in two ways. First, as noted above, even in the absence of *Felmlee*, SDGE might still be deprived of protection from *Privette* if plaintiff were able to show at trial that SDGE maintained sufficient control over the operations at SONGS to be directly liable for decedent's injuries. If, however, SDGE is able to show that it did not retain such control, SDGE would be protected by *Privette*. In such a case, state law would serve to give SDGE greater protection than contemplated by the Price–Anderson Act, and thus would be inconsistent with it. Second, if even the *Yanez* exception were found invalid such that the *Privette* doctrine, in its "pure" form, served to protect SDGE from liability, it would again give SDGE greater protection than found under Price–Anderson Act.

This Court, like the courts in *TMI* and *O'Conner*, finds that it should defer to the expert judgment of Congress and the NRC who, in passing the Price–Anderson Act and promulgating the regulatory guidelines, have carefully crafted a balance between developing nuclear energy and providing safety for workers and the public. The regulations here have achieved that balance by placing affirmative duties on "each licensee" to en-sure that radiation exposures do not exceed proscribed levels. 10 C.F.R. § 20.101(b) (establishing duty of "licensee" to prevent occupational doses greater than established limits); 10 C.F.R. § 20.102(a) (stating that, "each licensee shall require" workers to certify prior occupational radiation doses). This Court finds no more reason than the courts before it to question or upset that balance. The Court finds that applying the *Privette* doctrine in any way which would relieve SDGE of its duties under the regulations would be inconsistent with the federal regulations and thus is preempted by the Price–Anderson Act.

In addition, the Court notes that the regulatory regime has essentially incorporated a *Privette*-type rule. 10 C.F.R. § 20.101 establishes the occupational radiation dose limits in "restricted areas." Sections 20.105 and 20.106, on the other hand, set out the radiation dose limits for individuals in "unrestricted areas," defined as "any area access to which is not controlled by the licensee for purposes of protection of individuals from exposure to radiation and radioactive materials, and any area used for residential quarters." 10 C.F.R. § 20.3(17). The occupational radiation dose limit in "restricted areas" is 3 rems per calendar quarter. 10 C.F.R. § 20.101(b)(1). The radiation dose limit in "unrestricted areas" is 0.5 rem per year. 10 C.F.R. § 20.105(a). The "peculiar risk" doctrine, as discussed above, provides generally that owners undertaking dangerous activities will be liable to third parties for injuries occurring as a result of that activity. The rule announced in *Privette* contained an exception to the "peculiar risk" doctrine which results in different levels of responsibility to third parties (i.e. members of the public) and individuals who are employed on the premises. Similarly, the regulatory structure here contemplates a different level of responsibility for "occupational" exposure in "restricted areas" (which would

---

9. The federal courts have addressed preemption under the Price–Anderson Act with respect also to the statute of limitations and other tort claims. At least one court has found that the statute of limitations is not inconsistent with the Price–Anderson Act, which is silent with respect to the limitations period, and has applied the state statute of limitations to bar recovery. *Lujan v. Re-gents,* 69 F.3d 1511, 1513 (10th Cir.1995). Other courts have refused to preempt intentional tort and fraud claims. *Caputo v. Boston Edison,* 924 F.2d 11 (1st Cir.1991) (refusing to dismiss claim for intentional infliction of emotional distress); *Bohrmann,* 926 F.Supp. at 221 (refusing to dismiss claims for intentional infliction of emotional distress, battery and fraud).

effect workers, including employees of independent contractors) than it does for exposure in "unrestricted areas" where members of the public might be present.[10]

The Court finds that the state law doctrine announced in the *Privette* case relates to the standard of care and to the extent that it might apply to shield SDGE from liability when the regulations would not, it is inconsistent with the Price–Anderson Act and thus preempted by it. Thus, the Court DENIES SDGE's motion for summary judgment based on the *Privette* doctrine.

## C. The Applicable Standard of Care

Plaintiff argues here, as in the past, that the jury should be instructed not only on the numerical dose limits for occupational exposure, but also on the "as low as is reasonably achievable" ("ALARA") language found in 10 C.F.R. § 20.1.[11] Plaintiff argues that defendant should be liable for exposure not just over the numerical dose limits found in 10 C.F.R. Part 20, but also for any exposure above that which would be "reasonably achievable." In *TMI*, the Third Circuit definitively held that it is the numerical dose standard, rather the ALARA standard, which should be applied. *TMI*, 67 F.3d at 1113. The Court here is persuaded by the reasoning of the *TMI* case and thus finds that the numerical dose limits, rather than the ALARA standards, will be applicable to the case at bar.

## IV. CERTIFICATION FOR INTERLOCUTORY APPEAL

The various parties in this lawsuit have all requested that this Court certify its

rulings in this case for interlocutory appeal. Certification for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is appropriate if: (1) the order involves a controlling issue of law; (2) there are substantial grounds for a difference of opinion; and (3) immediate appeal from the order may materially advance the ultimate termination of the litigation. The Court finds that an interlocutory consideration by the appeals court of the orders denying summary judgment for SDGE and denying INPO's motion for referral to the NRC, including the determinations in this order and in earlier orders,[12] would be appropriate in the case at bar because the orders involve controlling issues of law about which there are substantial grounds for a difference of opinion and a determination at this point in the proceedings would materially advance the litigation. The Court herein GRANTS the request to certify the orders for interlocutory appeal.

## V. CONCLUSION

The Court finds that the rule announced in *Privette v. Superior Court* does not apply here to shield SDGE from liability because the non-delegable duties doctrine survives *Privette* and applies in the case at bar to hold SDGE liable for any exposures in excess of the numerical dose limits. The Court thus DENIES SDGE's motion for summary judgment. The Court finds in the alternative that to the extent that the *Privette* doctrine would shield SDGE from liability, either because none of the articulated exceptions are viable under California law or because SDGE did not retain sufficient "control" over

---

**10.** The regulations as they currently exist maintain the same scheme of exposure differentials but are titled in a way which is even more illustrative of Congressional intent to create different levels of responsibility for plant workers and members of the public. In the current regulations, 10 C.F.R. § 20.1201, *et seq.*, is entitled "Occupational Dose Limits," and sets, for individual adults exposed to radiation in occupational settings, an annual limit for total effective dose equivalent to 5 rems. 10 C.F.R. § 20.1201. Subpart D of those regulations, 10 C.F.R. § 20.1301, *et seq.* is entitled "Radiation Dose Limits for Individual Members of the Public," and sets, for individual members of the public, an annual limit of 0.1 rem. 10 C.F.R. § 20.1301.

**11.** 10 C.F.R. § 20.1(c), in relevant part, provides that licensees should:

> make every reasonable effort to maintain radiation exposures, and releases of radioactive materials in effluents to unrestricted areas, as low as is reasonably achievable.

**12.** The Court intends by this order to certify for interlocutory appeal not only the instant order but also the orders of December 7, 1995, February 16, 1996 and March 21, 1996 which relate to various matters in this case.

SONGS, state law would be inconsistent with the Price–Anderson Act and thus is preempted. Based on this second analysis, the Court also DENIES SDGE's motion for summary judgment. Finally, the Court finds that even if the *Felmlee* doctrine or the preemption of the Price–Anderson Act do not serve to deny SDGE summary judgment here, summary judgment would still be inappropriate as there is a material issue of fact as to whether or not SDGE maintained sufficient control to be held directly liable for decedent's injuries.

The Court also finds that plaintiff's claims against INPO in this lawsuit are not ones requiring the expertise of the NRC and thus GRANTS INPO's motion for reconsideration but AFFIRMS its earlier order denying the motion to refer. Finally, the court finds that the orders so far issued in this case, including the instant order, are suitable for appellate review at this time and thus CERTIFIES the case for interlocutory appeal.

IT IS SO ORDERED.