Scott **FINESTONE** and Rebecca Finestone, Individually, and as parents and friends of Zachary Finestone, Plaintiffs,

v.

**FLORIDA POWER & LIGHT COMPANY, a Florida Public Utility Corporation, Defendant.**

No. 03–14040–CIV.

United States District Court, S.D. Florida.

May 19, 2004.

Nancy Lee La Vista, Lytal Reiter Clark Fountain & Williams, West Palm Beach, FL, Robert J. McKee, Michael Joseph Ryan, Krupnick Campbell Malone Roselli, et al., Ft. Lauderdale, FL, for Plaintiffs.

Alvin B. Davis, Denise Brody Crockett, Steel Hector & Davis, Miami, Donald E. Jose, Jose & Wiedis, West Chester, PA, for Defendant.

### *ORDER*

COHN, District Judge.

**THIS CAUSE** is before the Court upon Defendant, Florida Power & Light Company's ("FP & L"), Motion for Determination of Duty Owed (DE 54), Plaintiffs' Response (DE 60), FP & L's Reply (DE 75), and FP & L's Request for Oral Argument (DE 70). The Court has considered the submissions of the parties and the record.

### I. Background

This action arises from operations at FP & L's Hutchinson Island Nuclear Plant ("Plant"), which operates as a generator of electricity from the use of nuclear power. (Compl. at ¶ 10). Plaintiffs claim that Zachary Finestone, contracted cancer as a result of FP & L's negligence. (Compl. at ¶ 27–32). Plaintiffs allege that their minor child developed neuroblastoma as a result of FP & L's negligence when it released radiation in an amount that exceeded the maximum allowable dose to the public outside its Plant. (Compl. at ¶¶ 31(a)-(g), 32). FP & L denies that releases of radioactive materials into the environment from the Plant exceeded allowable limits and denies that any action or failure to act by it caused Zachary Finestone's cancer. (Answer at ¶¶ 26, 31, 32).

The parties do not dispute that this is a

"public liability action"[1] arising under the Price–Anderson Act, 42 U.S.C. § 2210 ("Price–Anderson" or "Act"), because it is an action in which Plaintiffs seek to impose liability arising out of or resulting from a "nuclear incident."[2]

## II. Discussion

██ FP & L seeks a ruling by this Court based on federal regulations that both parties agree apply in this case. As an initial matter, Plaintiffs claim that FP & L's Motion is premature and that without any exchange of documents to this point, "it is impossible for the court to knowledgeably rule as to the extent of the duty owed by FP & L to Plaintiffs." (Resp. at p. 7). Plaintiffs argue that discovery is necessary to allow this Court to ascertain the duty of FP & L. (Resp. at ¶ 7). Courts in other PLA cases have found ruling on this issue early in the litigation is an effective and appropriate way to manage this type of case. *See, e.g.* *O'Conner*, 748 F.Supp. 672, 679 (C.D.Ill. 1990); *Whiting v. Boston Edison Co.*, 891 F.Supp. 12, 14 (D.Mass.1995). Accordingly, this Court will proceed with its analysis of the issue.

## A. The Duty of Care Owed in a Public Liability Action

The Eleventh Circuit has held that "federal safety regulations conclusively establish the duty of care owed in a public liability action." *Roberts v. Florida Power & Light Co.*, 146 F.3d 1305, 1308 (11th Cir.1998) (noting that "virtually every federal court to consider the issue, including three circuit courts of appeals, have held that federal regulations must provide the sole measure of the defendants' duty in a public liability cause of action.") (internal quotations and citations omitted).

## B. Duty of Care Under Federal Regulations

██ FP & L contends the standard of care owed in a PLA is governed by the Nuclear Regulatory Commission's ("NRC") regulations. "Plaintiffs agree with FP & L's assertion that the Federal regulations on nuclear safety generally do impose the standard of care on purveyors of nuclear power." (Resp. at p. 4). However, Plaintiffs argue that: (1) a different standard of care applies here because the victim in this case is a minor and the federal regulations have defined minors as a discrete class of persons (Resp. at p. 4); (2) the federal regulations require that doses to "unrestricted areas" be "as low as is reasonably achievable (Resp. at p. 4); and (3) FP & L's motion does not address the Offside Dose Calculation Manual or FP & L's Final Safety Analysis (Resp. at p. 2)."

### 1. 10 C.F.R. § 20.1003 Applies to Adults and Children

Plaintiffs contend that pursuant to 10 C.F.R. § 20.1003, "adults and children are to be treated separately and distinctly with respect to the regulations and proper doses." (Resp. at p. 4). Plaintiffs basis for this argument is that "[w]hile § 20.1003 defines member of the public as 'any individual except when that individual is receiving an occupational dose,' it further goes on to define an adult as an 'individual

---

1. "The term 'public liability' means any legal liability arising out of or resulting from a nuclear incident or precautionary evacuation . . . ." 42 U.S.C. § 2014(w).

2. A "nuclear incident" is "any occurrence, including an extraordinary nuclear occurrence, within the United States causing, with-

in or outside the United States, bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material . . . ." 42 U.S.C. § 2014(q).

18 or more years of age' and 'a minor' as an 'individual' less than 18 years of age." This argument is without merit. The distinction between an adult and a minor does not apply here. A member of the public means "any individual except when that individual is receiving an occupational dose." 10 C.F.R. § 20.1003. Plaintiffs have not alleged a claim for violation of "occupational dose" limit in this case.

### 2. As Low as Reasonably Achievable Standard ("ALARA")

Plaintiffs suggest that the regulations provide that doses in "unrestricted areas" be "as low as is reasonably achievable" ("ALARA"). (Resp.¶ 4). 10 C.F.R. part 20 provides the standards for protection against radiation. Subpart B, entitled "Radiation Protection Program," provides that each licensee shall develop, document and implement a radiation protection program commensurate with the scope and extent of the licensed activities. 10 C.F.R. § 20.1101(a). "The licensee shall use, to the extent practical, procedures and engineering controls based upon sound radiation protection principles to achieve occupational doses and doses to the members of the public that are as low as reasonably achievable (ALARA)." To implement the ALARA requirement, licensees are required to establish a constraint on air emission of radioactive material to the environment such that the individual members of the public likely to receive the highest dose will not be expected to receive a total effective dose equivalent in excess of 10 millirems per year. This constraint shall be established notwithstanding the dose limit in § 20.1301, and any emission exceeding that constraint must be reported and corrected. In contrast, Subpart D, entitled "Radiation Dose Limits for Individual Members of the Public," provides that each license shall conduct operations so that the total effective dose equivalent to individual members of the public from the licensed operation does not exceed 0.1 rem in a year, exclusive of exposures from other sources. 10 C.F.R. § 20.1301(a)(1).

Several courts have addressed the issue of which federal regulation represents the standard of care to be applied to negligence claims in a public liability action. See Corcoran v. New York Power Authority, 935 F.Supp. 376, 386 (S.D.N.Y.1996); McLandrich v. Southern California Edison Co., 942 F.Supp. 457, 467 (S.D.Cal. 1996). All but one have concluded that the standard of care is set by the dose limits, not ALARA. Most of the cases rely on the Third Circuit's opinion in In re TMI, 67 F.3d 1103, 1115 (3d Cir.1995) ("TMI III"), in which the court examined the applicable dose requirements and ALARA requirements and concluded that:

> Adopting ALARA as part of the standards of care would put juries in charge of deciding the permissible levels of radiation exposure and, more generally, the adequacy of safety procedures at nuclear plants—issues that have been explicitly reserved to the federal government in general and the NRC specifically . . . .

Id. at 1115. One court has disagreed with this result. In McCafferty v. Centerior Service Co., 983 F.Supp. 715, 718 (N.D.Ohio, 1997), the court noted that TMI III involved a pre–1991 ALARA regulation that was contained in 10 C.F.R. part 50 dealing with licensing of production and utilization facilities. The 1991 amendment inserted ALARA into part 20, the "standards for protection against radiation." The McCafferty court found this insertion significant enough to hold that both ALARA and the specific dose limit set forth the applicable standard of care. Id.

Although McCafferty is correct that the TMI III holding was based in part on the fact that ALARA was not, at that time,

included in the radiation protection standards, it was, as already noted, also based on the concern that adopting ALARA as part of the standard of care would leave to juries the determination of permissible levels of exposure. As the court in *TMI III* noted:

> Adoption of a standard as vague as ALARA would give no real guidance to operators and would allow juries to fix the standard case by case and plant by plant. An operator acting in the upmost good faith and diligence could find itself liable for failing to meet such an illusive standard. Our holding protects the public and provides owners and operators of nuclear power plants with a definitive standard by which their conduct will be measured.

*TMI III, 67 F.3d at 1115–116.* The concerns expressed by the court in *TMI III* are as real today as they were when written, regardless of the inclusion of ALARA within the regulations. ALARA sets forth constraints that are to be met, and reported and corrected when not met. It does not set forth the standard of care for a public liability action. Accordingly, this Court concludes that the standard of care is set forth by the Radiation Dose Limits for Individual Members of the Public applicable for the time of the releases in question.

### 3. Offsite Dose Calculation Manual and the Final Safety Analysis Report

Plaintiffs claim that the "Offsite Dose Calculation Manual," the guide written by FP & L as required by the NRC, provides different composite dose factors for infants, children, teenagers and adults. (Resp. at p. 5). As previously stated, the standard of care in this PLA is set forth by the Radiation Dose Limits for Individual Members of the Public applicable for the time of the releases in question *not* by a guide written by the Defendant.

Additionally, Plaintiffs contend the FP & L's Final Safety Analysis Report supplements technical specification of FP & L's Plant. 10 C.F.R. § 50.34(b) states that:

> Each application for a license to operate a facility shall include a final safety analysis report. The final safety analysis report shall include information that describes the facility, presents the design bases and the limits on its operation, and presents a safety analysis of the structures, systems, and components and of the facility as a whole . . . .

10 C.F.R. § 50.34. Here again, the standard of care in this PLA is set forth by the Radiation Dose Limits for Individual Members of the Public applicable for the time of the releases in question *not* by a report written by the Defendant to obtain its license.

### III. Conclusion

Based upon the foregoing, it is

**ORDERED AND ADJUDGED** that:

1. Defendant, Florida Power & Light Company's, Motion for Determination of Duty Owed (DE 57) is **GRANTED.**

2. The Court finds that the standard of care in this public liability action is set forth by the Radiation Dose Limits for Individual Members of the Public applicable for the time of the releases in question.

3. Defendant, Florida Power & Light Company's, Request for Oral Argument (DE 70) is **DENIED.**