Filed 6/11/25  Porter v. The Kenan Advantage Group CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MICHAEL J. PORTER et al.,<br><br>    Plaintiffs and Appellants,<br><br>      v.<br><br>THE KENAN ADVANTAGE GROUP, INC., et al.<br><br>    Defendants and Respondents.<br>_____<br><br>LPOD, INC.,<br><br>    Plaintiff and Appellant,<br>      v.<br><br>THE KENAN ADVANTAGE GROUP, INC., et al.<br><br>    Defendants and Respondents. | F087528/F087529<br>(Consolidated)<br><br>(Super. Ct. No. BCV-20-103030)<br><br><br>**ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING**<br><br>**[No Change in Judgment]** |

**THE COURT:**

It is ordered that the opinion filed herein on May 16, 2025, be modified as follows:

1.  On page 2, in the second full paragraph of the listing of counsel, add "Brandon M. Stoffers," so that the paragraph now reads:

> Davis Wright Tremaine, Joseph E. Addiego III, Thaila K. Sundaresan, Brittni A. Hamilton, and Brandon M. Stoffers for Defendants and

Respondents, The Kenan Advantage Group, Inc. and KAG West, LLC, sued as Keenan Advantage Group, Inc.

2. On page 20, the fifth sentence in the first full paragraph, beginning with "Further, the exemplary bill of lading" is deleted.

Except for the modifications set forth herein, the opinion previously filed remains unchanged. These modifications do not effect a change in the judgment.

Appellants' petition for rehearing filed on June 2, 2025, is hereby denied.

Respondents' petition for rehearing filed on June 3, 2025, is hereby denied.

LEVY, Acting P. J.

WE CONCUR:

FRANSON, J.

SMITH, J.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MICHAEL J. PORTER et al.,<br><br>    Plaintiffs and Appellants,<br><br>       v.<br><br>THE KENAN ADVANTAGE GROUP, INC., et al.<br><br>    Defendants and Respondents.<br>_____<br><br>LPOD, INC.,<br><br>    Plaintiff and Appellant,<br>       v.<br><br>THE KENAN ADVANTAGE GROUP, INC., et al.<br><br>    Defendants and Respondents. | F087528/F087529<br>(Consolidated)<br><br>(Super. Ct. No. BCV-20-103030)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Bernard C. Barmann, Judge.

Law Office of Ralph B. Wegis and Ralph B. Wegis for Plaintiff and Appellant, Michael J. Porter

Law Offices of Haytham Faraj, Haytham Faraj, and Katherine K. Melik-Stepanyan, for Plaintiff and Appellant, LPOD, Inc.

Davis Wright Tremaine, Joseph E. Addiego III, Thaila K. Sundaresan, and Brittni A. Hamilton, for Defendants and Respondents, The Kenan Advantage Group, Inc. and KAG West, LLC, sued as Keenan Advantage Group, Inc.

-ooOoo-

Appellants Michael J. Porter and LPOD, Inc. appeal from the summary judgment entered in favor of respondents The Kenan Advantage Group, Inc. and KAG West, LLC[1] (collectively, Kenan).  In this appeal, appellants challenge one procedural and three substantive rulings.  Procedurally, appellants contend the trial court wrongly ordered Kenan to provide a reformatted separate statement of unopposed material facts.  Substantively, appellants' contentions cover three topics determined by the trial court which partially overlap across four causes of action.  With respect to appellants' negligence cause of action, the trial court found Kenan did not owe appellants' a statutorily defined duty of care.  Across appellants' negligence action and its negligent and intentional misrepresentation actions, the trial court found no material issue of fact regarding causation.  And with respect to appellants' trespass cause of action, the trial court found appellants' consent to the delivery of the contested products dispositive.

For the reasons set forth below, we affirm in part and reverse in part.  On the procedural claim, we conclude the trial court acted within its discretion when ordering a reformatted version of Kenan's separate statement of unopposed material facts.  On the substantive claims, we consider the arguments in the context of the specific causes of

---

[1]    Appellants initially filed suit against a party named Keenan Advantage Group, Inc. and filed their appeal using the same name.  However, before the trial court the parties entered into a stipulation that the correct party names were The Kenan Advantage Group, Inc. and KAG West, LLC.  The judgment below referred to this stipulation and included these parties.  We refer to respondents in line with the stipulation.

action, rather than in the conceptual structure argued by appellants. In doing so, we conclude the trial court correctly granted summary judgment on appellants' negligence cause of action because appellants could not show a statutory duty of care existed. We further conclude the trial court correctly granted summary judgment on appellants' trespass cause of action because appellants' consent to delivery of the contested products precludes the action. For the negligent and intentional misrepresentation causes of action, however, we conclude the trial court erred in granting summary judgment on causation grounds. The causation inquiry related to negligent and intentional misrepresentation is highly factual and a dispute regarding the reasonableness of appellants' actions exists, which requires a trial to resolve. We note, however, that the trial court elected not to resolve some properly raised issues on mootness grounds. We take no position on whether summary judgment could again be granted after remand.

## FACTUAL AND PROCEDURAL BACKGROUND

In January 2023, appellants filed their third amended complaint against Kenan, alleging actions for negligence, negligent misrepresentation, intentional misrepresentation, and trespass. According to the complaint, appellants are a Kern County business that specializes in "receiving off spec streams of petroleum products" and using a "special process to dehydrate the oil and return it to a consumable product." Kenan is a company based in Ohio that operates as a transporter of fuels and other products.

Although specializing in off spec petroleum products, appellants admit they do "not have a hazardous waste permit" and claim they do not accept "any waste (hazardous or non-hazardous," a point allegedly made "explicitly clear" to Kenan. Despite this, appellants entered into agreement with Kenan whereby Kenan made nine shipments to appellants of a product labelled as " 'transmix.' " Appellants voluntarily took in some shipments and paid for others, "intending to use [the transmix] as dilutent [*sic*]."

According to the complaint, hazardous waste products "cannot be shipped with a straight bill of lading" but must instead be shipped with "a 'hazardous waste manifest' " Appellants state they relied on this fact when they accepted the shipments from Kenan, which were sent under a bill of lading, and only found out they had accepted a toxic waste when they were charged with certain violations by the Department of Toxic Substances Control. Appellants alleged that the product they received was not technically transmix, but rather a mixture of gasoline and diesel that was formed when truck drivers mistakenly mixed different loads of fuel. Appellants alleged Kenan's failure to properly label the shipments as hazardous waste caused appellants substantial harm because they unknowingly accepted and stored toxic waste products sent to them.

After discovery, Kenan filed for summary judgment on all four claims. Kenan's briefing identified several grounds for summary judgment, including the assertions of no duty of care, no substantial factor in appellant's harm, and express permission to enter, among others. However, Kenan's notice of motion identified only that it would challenge each of the four causes of action. Kenan's initial separate statement of undisputed material facts (separate statement of facts) identified 43 enumerated facts and supporting evidence in support of the motion but did not specifically tie those facts to any specific claims made in the underlying motion.

Appellants opposed the motion and challenged the separate statement of facts. In challenging the separate statement of facts, appellants argued the format did not comport with California Rules of Court 3.1350, subdivision (h). At a subsequent hearing, on August 14, 2023, the trial court continued the summary judgment proceedings and ordered Kenan to reformat its separate statement of facts. Kenan complied. In the new format, Kenan first repeated the initial 43 factual assertions. It then added subheadings that mirrored each subheading or argument in its briefing on the motion for summary judgment and included within those subheadings and identification of which of the 43

4.

factual assertions applied, utilizing the same number structure, factual assertions, and evidentiary citations.

Appellants moved to strike the reformatted separate statement of facts, arguing the subheadings taken from the briefing were not proper because they were not the four specific grounds identified in Kenan's notice of motion, but the court denied the request and appellants submitted a response to the reformatted statement. The trial court then heard and granted the motion for summary judgment. As part of its ruling, which was later modified after further motion practice, the court recounted several disputed and undisputed facts arising from these submissions.

The undisputed facts and the court's overall ruling provide more detail regarding the underlying dispute. The core issues centered around what was shipped to appellants and how those shipments should be categorized under various legal and regulatory requirements. The undisputed facts affirmed that "[Kenan] delivered nine shipments of mixed fuels products to LPOD" and that the "mixed fuels sold by [Kenan] to LPOD fit the federal definition of transmix." However, it was heavily disputed whether those mixed fuels also constituted hazardous waste under California law based in part on a claim that shipping those fuels to an unlicensed entity triggered a provision declaring them toxic waste. Accordingly, the court found a disputed fact concerning whether the "[Kenan] mixed fuels were shipped appropriately with a bill of lading, that had an accurate description of what the mixed fuels materials were."

At the same time, the undisputed facts showed that appellants "did not rely on the description on the bill of lading when accepting the mixed fuels" and that "the existence of a certified bill of lading was more important to [appellants] than the name of the product on the bill of lading." Based on this, "to determine whether to accept a delivery, LPOD relied on the existence of a certified bill of lading stating that the delivered item was a 'product.' " Despite this, it was also undisputed that Kenan informed appellants that the mixed fuels "included a mix of gasoline and diesel."

5.

Ultimately the trial court granted summary judgment on three main principles. With respect to the negligence cause of action, the court determined that the relevant statutory and regulatory scheme governing the transportation of hazardous waste did not set a statutory standard of due care supporting the cause of action.

With respect to each of the negligence, negligent misrepresentation, and intentional misrepresentation claims, the court concluded appellants could not "demonstrate a causal connection" between Kenan's alleged failure to use a manifest and the damage to appellants arising from accepting the mixed fuels. The court noted that the alleged damages arose from penalties imposed because "the [Kenan] deliveries were 'hazardous waste transmix' because LPOD was not a permitted facility and it 'accepted, stored and treated' the transmix." The court rejected any claim that postdelivery actions were relevant, noting "the product was hazardous before it was delivered and there was no exception to it being deemed hazardous as LPOD was not [a] facility permitted to receive it." However, the court concluded that "LPOD's harm was caused by accepting, storing, transporting, and altering the deliveries that were deemed hazardous" and that if appellants "had checked all bills of lading and presuming the product was identified as 'transmix' " either "knew or should have known that as an unpermitted facility, LPOD was not permitted to accept any transmix." In another formulation, the court explained that "while [Kenan] failed to establish that its bill of lading statements were 'truthful,' they do establish that regardless of what label it used, that is not what caused any alleged harm," rather the "alleged harm was caused by LPOD's acceptance of the deliveries they were not permitted to accept without checking them and then using them to create further hazardous waste."

Finally, with respect to the trespass claim, the court found no dispute "that [Kenan] had permission to make deliveries and that it made deliveries of the product ordered by" appellants. To the court, this meant "there was no trespass as to the delivery of the materials as arranged between the parties" and that "LPOD's acceptance of the

6.

deliveries preclude[s] any trespass claim since the product was now theirs." In this analysis, the court also noted appellants offered "no facts or evidence as to what the scope of [Kenan's] permission to enter the facility was" and had not established they only accepted nonhazardous waste or that they had informed Kenan of such a restriction.

This appeal timely followed.

## DISCUSSION

Appellants' opening brief first challenges the procedural propriety of Kenan's motion for summary judgment, contending Kenan's separate statement of facts was improper. Following this, appellants contend the trial court was wrong on the law when granting summary judgment. Within this broad contention, appellants assert that the trial court wrongly imposed a duty on LPOD to check shipments made to it, that it misunderstood the regulatory scheme pertaining to waste handling, and that therefore the trial court "improperly absolved [Kenan] of any duty to the recipients of its waste." Appellants also generally allege they raised material issues of fact tied to facts identified as numbers 14, 16, and 46.

Appellants' briefing does not focus on any particular elements underlying the four causes of action brought in this case. Rather, it appears to highlight a general claim that the court misunderstood the nature of the law governing waste handling and thereby failed to impose a statutory duty on Kenan to ship the contested materials under a manifest. Within this argument, appellants raise disputes related to causation generally and occasionally mention the existence of their trespass claim. This is problematic for review as the trial court's order dismissed each claim on specific grounds related to elements it found were legally lacking or upon which no material issue of fact was raised. In reply, appellants bring some focus to their claims, arguing Kenan owed LPOD a duty of care – defined by Health and Safety Code section 25101 and several related state and federal laws and regulations pertaining to waste handling – and that Kenan's actions caused LPOD's alleged harm. Only in this reply do appellants raise a specific argument

7.

that the court incorrectly granted summary judgment on their trespass claim, and at no point can this court identify an argument tailored specifically to either appellants negligent misrepresentation or intentional misrepresentation claims.

Issues not raised and supported by argument and citation to law are considered forfeited on appeal. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277.) While appellants' briefing falls close to this line, the court can discern certain broad arguments which it resolves below. The court considers any arguments not discussed below and related to appellants' individual causes of action to be forfeited.

## I. Standards of Review and Applicable Law

The standards of review for the issues raised in this case are well settled. We thus begin by providing a general framework for review in this case, adding additional relevant legal authority when discussing the arguments raised.

In moving for summary judgment, Code of Civil Procedure section 437c, subdivision (b)(1) provides that the "supporting papers shall include a separate statement setting forth plainly and concisely all material facts that the moving party contends are undisputed. Each of the material facts stated shall be followed by a reference to the supporting evidence. The failure to comply with this requirement of a separate statement may in the court's discretion constitute a sufficient ground for denying the motion." Ultimately, the court retains an inherent authority to manage the proceedings before it. (See *Walker v. Superior Court* (1991) 53 Cal.3d 257, 266–267 [discussing inherent powers of the court].) " 'A trial court's exercise of discretion will be upheld if it is based on a "reasoned judgment" and complies with the "… legal principles and policies appropriate to the particular matter at issue." ' " (*Security Pacific National Bank v. Bradley* (1992) 4 Cal.App.4th 89, 94.)

"An order granting summary judgment is reviewed de novo. [Citation.] As a practical matter, ' "we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary

8.

judgment." ' [Citation.] A motion for summary judgment is properly granted 'if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citations.] 'From commencement to conclusion, the moving party bears the burden of persuasion that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.' " (*Doe v. Good Samaritan Hospital* (2018) 23 Cal.App.5th 653, 661.)

## II. The Reformatted Separate Statement Was Proper

Appellants contend the trial court abused its discretion when it granted Kenan an opportunity to reformat its separate statement of facts. Appellants generally contend that they were prejudiced by the length of the reformatted separate statement of facts and the fact the issues identified did not match the notice of motion for summary judgment. We do not find an abuse of discretion.

California Rules of Court, rule 3.1350, subdivision (h) provides the format for the separate statement of facts on summary judgment. It requires a two-column format that lists the moving party's undisputed material facts and supporting evidence on one side and the opposing party's response and supporting evidence on the other. When summary adjudication is sought, the rules add an additional requirement that "the specific cause of action, affirmative defense, claims for damages, or issues of duty must be stated specifically in the notice of motion and be repeated, verbatim, in the separate statement of undisputed material facts." (Cal. Rules of Court, rule 3.1350, subds. (b), (h).)

A trial court may choose to resolve a summary judgment motion without a separate statement of undisputed material facts, particularly in simple cases. (*Security Pacific National Bank v. Bradley*, *supra*, 4 Cal.App.4th at p. 94.) Thus, when a proper separate statement is not provided, the trial court can either grant or deny the motion based on the failure "or it can continue the motion or otherwise permit the filing of a proper separate statement." (*Ibid.*) "In certain instances, particularly before granting summary judgment or adjudication, an opportunity to correct deficiencies in the separate

9.

statement may be appropriate."  (*Beltran v. Hard Rock Hotel Licensing, Inc.* (2023) 97 Cal.App.5th 865, 876, fn. 5.)

In this case, Kenan moved for summary judgment and provided a separate statement of facts that appears to technically meet the requirements of the statute and rules for summary judgment.  However, the trial court concluded that this format was insufficient for its needs, explaining the motion sought summary adjudication as an alternative and therefore that the submission was "just a lump of facts which the Court is, I assume, is supposed to decide while looking at them which one applies to which cause of action and as to which issue on each cause of action.  The Court is not included to do that work."  The court thus ordered Kenan to submit a reformatted version, complying with the summary adjudication requirements, additionally explaining, "I don't want new evidence and new points and authorities.  I just want new separate statements that respond to this."

We conclude this reformatting order was well within the court's discretion.  As noted above, the court is expressly granted discretion to deny a motion for failing to properly comply with the separate statement of facts requirement and, when such an error occurs, can therefore either deny the motion or grant a continuance to resolve the issue. (*Security Pacific National Bank v. Bradley*, *supra*, 4 Cal.App.4th at p. 94.)  While appellants argue this discretion extends only to nonmoving parties, the express language of Code of Civil Procedure 437c, subdivision (b)(1), granting the court discretion to deny a motion based on the moving party's failure, contradicts this claim.

Here, the court possessed a separate statement of facts and opposition but found the complexity of the case and the number of issues raised to require a more specific version of that submission.  The court ordered, and upon this court's review, Kenan provided a reformatted version that did not add any new evidentiary citations and did not generate any new facts alleged not to be in dispute.  Rather, Kenan's submission

10.

reorganized the existing facts to comport with the issues raised in its motion. Such an order was well within the court's statutory and inherent discretion.

While appellants contend the court could not permit this because the issues identified in the reformatted submission were not specifically called out in the notice of motion submitted with Kenan's briefing, we find no abuse of discretion nor any prejudice in the court's order. Again, upon review, the record shows that no new legal arguments were made, and that the submission paralleled the headings and direct arguments in Kenan's previously submitted briefing. Although under California Rules of Court, rule 3.1350, subdivision (b), there was a technical defect in the notice of motion compared to the separate statement of facts, any error was harmless given that no new material was provided. The court's internal management of the case resulted in the most efficient presentation of the issues for judicial resolution. (See *Knowles v. Robinson* (1963) 60 Cal.2d 620, 628 [even violation of mandatory rules of court subject to harmless error analysis].)[2]

For similar reasons we reject appellants' argument that requiring a reformatted statement modified the statutory deadlines for summary judgment under Code of Civil Procedure section 437c, subdivision (a)(2). There is no dispute that the original filings in this matter complied with the statutory requirement that submissions be made more than a set time before the hearing. And this court has confirmed that no substantive modifications arose from the reformatting order. Under such a factual scenario, the court finds no basis to limit the trial court's ability to order the reformatted filings without resetting the statutory period between submission and hearing and no potential prejudice in any alleged error. All evidence and argument had already been timely submitted and

---

[2]     We, likewise, find harmless any claim of error based on Kenan submitting a reply to the separate statement of facts. There appears to be no reliance on the document by the trial court outside of Kenan's responses to new facts alleged by appellants nor any indication that this additional submission affected the proceedings.

the court only ordered the reformatted submission to assist in analyzing those submitted issues. The court's order did not impair appellants' right to "sufficient time to assemble the relevant evidence and prepare an adequate opposition" and did not improperly shorten the notice period. (Cf. *McMahon v. Superior Court* (2003) 106 Cal.App.4th 112, 118 [finding court could not shorten statutory notice period and describing valid reasons for legislative determination of needed notice].)

## III.    There Is No Statutorily Defined Negligence Duty in This Case

Having resolved the procedural issue, we turn next to the substantive determinations supporting summary judgment. The first issue arises in the context of appellants' first cause of action for negligence, where the trial court found no duty was owed.

On appeal, the scope of appellants' argument that Kenan owed them a legal duty of care in this case is fairly narrow. At no point do appellants contend that a general, common-law duty required Kenan to ship the contested materials under a manifest or otherwise act in any manner other than it did. Notably, appellants neither cite to nor discuss the general statutory imposition of a duty of reasonable care from Civil Code section 1714 or the factors for setting aside such a duty. Similarly, appellants neither cite to nor discuss Evidence Code section 669, which allows for a presumption of negligence upon violation of a statute but only applies to define the relevant standard of care once a legal duty already exists.[3] (*Rice v. Center Point, Inc.* (2007) 154 Cal.App.4th 949, 958–959.) This focus corresponds to the arguments made to the trial court, which noted appellants alleged only statutory and regulatory duties in the third amended complaint

---

[3]    Appellants do cite to case law premised on Evidence Code section 669, although they do not provide a meaningful analysis under that statutory scheme. Notably, the analysis for presuming negligence under section 669 is similar, but not identical, to the analysis for imposing a duty by statute. (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 927, fn. 8 ["Examined with care, however, [negligence per se] consists of two distinct, albeit occasionally overlapping, concepts"].)

12.

and ultimately found that the Health and Safety Code provisions relied upon by appellants did not support finding a legal duty between Kenan and appellants.

Under California law, the default rule is " 'that each person has a duty "to exercise, in his or her activities, reasonable care for the safety of others." ' " (*Kuciemba v. Victory Woodworks, Inc.* (2023) 14 Cal.5th 993, 1016.) This general rule has limits, however, and is said to "not impose a general duty to avoid purely economic losses." (*Sheen v. Wells Fargo Bank* (2022) 12 Cal.5th 905, 920.) " 'Duty is not universal; not every defendant owes every plaintiff a duty of care.' " (*Ibid.*) That said, a " 'duty of care may arise through statute' or by operation of the common law." (*Ibid.*)

"[S]tatutes and regulations may be used to establish duties and standards of care in negligence actions," two distinct but overlapping concepts. (*Elsner v. Uveges*, *supra*, 34 Cal.4th at p. 927, fn. omitted.) When a statute or regulation embodies and implements " 'a "broad, generally applicable rule of conduct on the basis of general public policy" ' " it is "capable of forming the basis for a duty of care." (*Issakhani v. Shadow Glen Homeowners Assn.* (2021) 63 Cal.App.5th 917, 930 (*Issakhani*).) "Even if a statute or ordinance is designed to embody and effectuate fundamental public policy by setting forth an appliable rule of conduct, it can give rise to a duty of care actionable in negligence only if (1) the plaintiff invoking the statue is ' "a member of the class of persons the statute [or ordinance] … was designed to protect," ' and (2) the ' "harm" ' the plaintiff suffered was ' "one the statute [or ordinance] … was designed to prevent." ' " (*Id.* at p. 931.)

"Not every infraction of a statute will result in civil liability. 'Many statutes, such as those directed against various activities on Sunday, obviously are intended to protect the interests of the state, or the community at large, rather than those of any particular class of individuals.' [Citation.] It follows that violation of such a statute constitutes actional negligence only as to those persons for whose benefit or protection the statute was enacted." (*Nunneley v. Edgar Hotel* (1950) 36 Cal.2d 493, 497.) Absent legislative

intent to protect the specific class of person affected, a statute protecting the community at large will not support a statutory duty. (*Issakhani*, *supra*, 63 Cal.App.5th at pp. 932–933.)

Looking at California's waste treatment codes, appellants cite to Health and Safety Code section 25101 subdivision (c) for the claim they are a member of the class of persons the statutory – and thereby regulatory – scheme was designed to protect. We do not agree. Subdivision (c) provides that "in order to protect the public of this state and particularly the communities where hazardous wastes are treated and disposed, it is essential to assure full compensation of all people injured or damaged by hazardous waste." (Health & Saf. Code, § 25101, subd. (c).) It then notes that to meet this goal it is "necessary that the Hazardous Waste Management Council … make recommendations regarding a system of insurance and mechanisms establishing liability to achieve this result." (*Ibid.*)

Appellants contend that this statutory structure protects the public generally and that appellants, as a purchaser of regulated waste, are members of the public generally. However, the language of the statute is not as broad as appellants suggest. Rather, the statute notes that it is designed to protect communities and individuals affected by the harms of hazardous waste. And the broader statute notes that such harms are brought about through unsafe disposal. (See Health & Saf. Code, § 25101, subd. (b) ["In order to assist the generators of hazardous waste in meeting the responsibility for the safe disposal of hazardous waste it is necessary to establish the Hazardous Waste Management Council"].) The class of persons protected are thus best categorized as those physically harmed by improper disposal efforts (i.e. – those for whom an insurance system would be valuable), not those subject to fines for failures in complying with the disposal requirements.[4]

---

[4]     This narrower understanding is consistent with the one case found by this court, not cited by either party, where the waste disposal laws were found to support a duty,

Further, nothing in the provisions cited by appellants or found by the court indicates the protections are designed to compensate companies or individuals that contract with waste generators to purchase or utilize materials that may or may not be deemed toxic waste. Even if such a broad reading could be inferred from a claim that the statutory and regulatory scheme is designed to protect the public generally, being a member of the general public protected by regulations generally protecting the public does not support finding a duty. (*Issakhani*, *supra*, 63 Cal.App.5th at pp. 932–933; see also *Newhall Land & Farming Co. v. Superior Court* (1993) 19 Cal.App.4th 334, 338 [noting that, in line with the Restatement 2nd of Torts, concluding a statute is designed to protect the public at large does not support using it to set a standard of care before finding the statute at issue also protected agricultural operations specifically, of which plaintiff was a member].) Likewise, any secondary protections which could flow to appellants as members of the public would not demonstrate the policy guided decision making necessary to impose a statutory duty. (*Issakhani*, at pp. 933–934 [noting "the fact that an ordinance not designed to protect the class of persons of which plaintiff is a part and not designed to protect against the harm she suffered might have a *secondary* effect or design to protect that class against that harm is not enough to create a duty of care" and collected cases in support]."

*Park v. Burlington Northern Santa Fe Railway Co.* (2003) 108 Cal.App.4th 595. In *Park*, the overall statutory scheme – both state and federal – was found to create a nondelegable duty to employees of a contractor hired to transport and dispose of the waste. The duty required the generator to properly pack the hazardous waste and see that it was properly disposed of but was limited by a requirement that the generator's conduct must affirmatively contribute to any alleged injury. (*Id*. at pp. 608–610.) The duty to comply was thus owed to workers who could be harmed by handling toxic waste and not the public generally. The analysis provides no support for a duty to companies willingly buying and selling product which may qualify as toxic waste and harmed by penalties imposed for accepting, storing, or utilizing the product.

15.

Aside from not falling within the class of persons protected by the statutory scheme, appellants also fail to demonstrate that they suffered the type of harm for which the statutory scheme provides redress. Appellants do not directly argue this point in their briefing but do imply throughout their arguments that had a manifest been utilized they would not have accepted the transmix shipments and therefore would not have been harmed by the penalties imposed for improperly storing toxic waste. In other words, appellants claim they would not have accepted a product for which they negotiated and paid had they, after completing those tasks, come to learn that what they purchased was toxic waste.

The harm suffered from the failure to use the manifest was a lack of notice of the regulated nature of the product. Nothing appellants point to in the statutory or regulatory scheme protects against mistakes of knowledge made by sophisticated parties in the business of buying, transporting, storing, and utilizing materials that could be deemed toxic waste. At best for appellants, the manifest system is designed to ensure toxic wastes do not end up in locations not permitted to handle them. But this is just another way to protect communities and relevant workers from harms associated with toxic wastes. Nothing in the materials cited by appellants demonstrates the regulations seek to prevent penalties imposed for failing to ensure these protections are met.

Accordingly, we find Kenan did not owe appellants a statutorily defined legal duty to ship the agreed upon materials under a manifest as opposed to a bill of lading, nor to conduct itself in any manner supporting the negligence claim in this case. Having reached this conclusion, we need not specifically analyze the claims that the trial court imposed a duty on appellants to check all shipments, drew adverse inferences against appellants, or incorrectly found certain facts were undisputed in the context of appellants' negligence action. Nor do we need to consider causation from a purely negligence standpoint. None of these issues affect the core analysis finding no duty on Kenan.

**IV. Issues of Fact Exist for the Negligent and Intentional Misrepresentation Causes of Action**

The trial court granted summary judgment to Kenan with respect to appellants' causes of action for negligent and intentional misrepresentation on the ground that, consistent with its causation analysis for the negligence cause of action, "while [Kenan] failed to establish that its bill of lading statements were 'truthful,' they do establish that regardless of what label it used, that is not what caused any alleged harm to [appellants]. The alleged harm was caused by LPOD's acceptance of the deliveries they were not permitted to accept without checking them and then using them to create further hazardous waste." The court's analysis also referred back to its discussion of causation related to the negligence claim. There, the court had concluded that based on the violations alleged against LPOD, its "harm was not caused by [Kenan] failing to use a manifest for its deliveries" but rather "by accepting, storing, transporting, and altering the delivers that were deemed hazardous" by the prosecuting authorities. The court noted that checking the bills of lading would have informed appellants they were not permitted to accept the product delivered.

Both intentional and negligent misrepresentation claims are generally analyzed from within the framework of fraud. (See *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239, fn. 4 [discussing fraud claims] (*Alliance Mortgage Co.*).) "The essential elements of a count for intentional misrepresentation are (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage. [Citations.] The essential elements of a count for negligent misrepresentation are the same except that it does not require knowledge of falsity but instead requires a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true." (*Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 230–231.)

17.

The trial court's causation analysis correlates to the requirement of actual and justifiable reliance. "Reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction. [Citations.] 'Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact.' [Citations.] 'However, whether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts.' " (*Alliance Mortgage Co.*, *supra*, 10 Cal.4th at p. 1239.)

The undisputed facts identified for this dispute show that LPOD mixes and treats various off-spec fuels and that appellants had "previously seen bills of lading or contracts for off-spec fuels at the LPOD facility." Further, in conducting these operations "LPOD never compiled a list of materials that it would not accept" and never distributed such a list to suppliers. Despite this, appellants "did not rely on the description on the bill of lading when accepting the mixed fuels from [Kenan.]" Rather, "the existence of a certified bill of lading was more important" than the name of the product because "LPOD relied on the existence of a certified bill of lading stating that the delivered item was a 'product.' " In the negligence context, one additional undisputed fact stated "LPOD was willing to pay" for the products because they would be useful and had plans to "blend the mixed fuels into crude oil."

Although the trial court's analysis employs a fairly commonsense logic – concluding that any harm done to appellants was caused by their failure to ensure they could purchase the items they accepted, their failure to verify the shipments received, and their own negligence – this is not the only conclusion reasonable minds could reach under the limited uncontested facts provided. Appellants' complaint alleged, and submissions in the summary judgment proceedings supported the claim, that appellants did not accept

any form of waste products and would have rejected any shipments labeled as waste. The record further indicated that Kenan was responsible for properly labeling its own products and that appellants relied on compliance with that requirement when accepting shipments. And the trial court specifically found whether Kenan appropriately shipped the mixed fuels under a bill of lading with an accurate description to be a disputed fact. A jury could therefore accept that appellants were relying on assertions made by Kenan that the mixed fuels delivered were not a waste product, hazardous or otherwise, and would not have accepted the mixed fuels if they had been informed the products constituted hazardous waste.

Notably, negligence in failing to discover the falsity of a statement is not a defense to negligent or intentional misrepresentation. (*Carrol v. Gava* (1979) 98 Cal.App.3d 892, 897 [rejecting comparative fault analysis in negligent misrepresentation case]; *Alliance Mortgage Co.*, *supra*, 10 Cal.4th at p. 1247 [same in intentional misrepresentation cases].) Rather, a comparative fault defense folds into any analysis regarding the reasonableness of the plaintiff's reliance. In that context, however, a plaintiff is not " 'held to the standard of precaution or of minimum knowledge of a hypothetical, reasonable [person]' " and will be denied recovery only if the relative conduct " 'in light of [their] own intelligence and information was manifestly unreasonable.' " (*Alliance Mortgage Co.*, at p. 1247.) In other words, the question asked is whether it was " '*reasonable* for [the] plaintiff to accept [the] defendant's statements without an independent inquiry or investigation.' " (*OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.* (2007) 157 Cal.App.4th 835, 864.) To fail this inquiry, " '[i]t must appear that [the plaintiff] put faith in representations that were "preposterous" or "shown by facts within his observation to be so patently and obviously false that [one] must have closed [their] eyes to avoid discovery of the truth." [Citation.] Even in case of a mere negligent misrepresentation, a plaintiff is not barred unless [their] conduct, in the

light of [their] own information and intelligence, is preposterous and irrational.' " (*Id.* at p. 865.)

The record in this case does not support Kenan's claim that it was unreasonable as a matter of law for appellants to rely on any intentional or negligent statements that the mixed fuels delivered were not toxic waste. Kenan's statements that it wished to sell a usable product and its use of a bill of lading as opposed to a hazardous waste manifest preclude this conclusion. As appellants point out, the regulatory scheme applicable to the transportation of hazardous waste requires the party generating and shipping that waste to properly classify it as such. Appellants regularly utilized off spec petroleum products in their operations, but the record provides no factual indication that they should have been aware that they needed a permit to obtain this particular type of mixed fuel. Further, the exemplary bill of lading submitted on summary judgment certified, consistent with industry practice, "that the below-named materials are properly classified, described, packed, marked, and labeled …." As the trial court noted, appellants knew they were an unpermitted facility that could not accept certain mixed fuels, regardless of whether a bill of lading or hazardous waste manifest was used. However, the record shows Kenan had its own responsibilities to properly label its shipments; ultimately choosing to ship under a bill of lading. These conflicting facts require a jury to determine whether it was reasonable for appellants not to independently verify the shipments were acceptable and instead rely on the bill of lading as the basis for accepting the shipments.

The trial court thus erred in granting summary judgment on appellants' negligent and intentional misrepresentation causes of action.[5]

---

[5] The trial court found issues of fact on the remaining elements and ultimately chose not to reach issues arising under the economic loss rule. We take no position on these issues. We further note that appellants raised no argument against the judgment on Porter's individual assertions of negligent and intentional misrepresentation based on the fact no representations were made to him individually. Our opinion does not affect the grant of summary judgment on that ground.

20.

## V.        Consent Precludes the Trespass Cause

The trial court granted Kenan's motion for summary judgment on the trespass cause of action based on its conclusion that no material issue of fact existed disputing that Kenan entered appellants' property with express permission to deliver the contested mixed fuels.  In reaching its conclusion, the court noted a lack of relevant facts regarding the nature of the permission granted but found an implied permission to enter the facility to make the contested deliveries.[6]  The court found it "undisputed that [Kenan] had permission to make deliveries and that it made deliveries of the product ordered by [appellants], so there was no trespass as to the delivery of the materials as arranged between the parties."

On appeal, appellants contend that the trial court improperly drew inferences against them by suggesting they had to check the contents of all deliveries made on a bill of lading and that "LPOD never gave [Kenan] permission to deliver waste of any kind," meaning Kenan exceeded the scope of any permission to make deliveries granted.  We find no error based on these arguments.

" 'The elements of trespass are: (1) the plaintiff's ownership or control of the property; (2) the defendant's intentional, reckless, or negligent entry onto the property;

---

[6]        In its discussion, the court notes that "Fact 14 fails to establish that the shipments were 'appropriately' made by a bill of lading or that they contained an 'accurate' description of the contents.  The evidence shows that all shipments were done by a bill of lading which described the contents.  That's it."  This statement is consistent with how the court handled Fact 14 throughout its ruling.  However, in a minute order denying appellants' motion for a new trial, the court implied that Fact 14 was undisputed.  As a result, appellants argue the court wrongly analyzed Fact 14.  In the context of the summary judgment motion, we find the court properly found Fact 14 was, in fact, contested.  Any contrary language from the minute order appears to merely attempt to reject appellants' later arguments without affecting the court's substantive findings regarding the lack of underlying evidence or actual disputes on the meaningful portions of the factual assertion.  Accordingly, we need not overturn any portion of the court's order based on this argument.  Relatedly, we find no basis to reach appellants arguments regarding Fact 16 or Fact 46, which do not affect the analysis in this opinion.

21.

(3) lack of permission for the entry or acts in excess of permission; (4) harm; and (5) the defendant's conduct was a substantial factor in causing the harm.' " (*Golden Gate Land Holdings, LLC v. Direct Action Everywhere* (2022) 81 Cal.App.5th 82, 90–91.) Trespass " ' "is an unlawful interference with *possession* of property … [and] [p]eaceable entry on land by consent is not actionable." ' " (*County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 315.) Thus, subject to certain exceptions, "[w]here the owner of property voluntarily places a product on the property and the product turns out to be hazardous, the owner cannot prosecute a trespass cause of action against the manufacturer of that product because the owner has consented to the entry of the product onto the land." (*Ibid.*)

It is well settled and hornbook law that consent may be invalidated by actions in excess of the consent given or when the consent is induced by fraud. (*Cassinos v. Union Oil Co.* (1993) 14 Cal.App.4th 1770, 1780 ["Where one has permission to use land for a particular purpose and proceeds to abuse the privilege, or commits any act hostile to the interests of the lessor, he becomes a trespasser"]; see Rest. 2d Torts, §§ 892A, 892B; see also *Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1351 [referring to the Restatement in trespass action].) However, the mere existence of a mistake or misrepresentation will not necessarily invalidate any existing consent. (See Rest. 2d Torts, § 892B, comm. h [discussing how a misrepresentation may or may not result in loss of consent].) Where consent was provided based on a misrepresentation, that consent will be invalidated only if the mistake goes to the nature of the invasion or the extent of the expected harm. (*Ibid.*)

In this appeal, appellants contend that Kenan exceeded the scope of consent given because that consent was limited to delivering products that were properly shipped under a bill of lading. As the trial court noted, the record does not show a contested issue of fact on this point. Rather, the record shows appellants granted Kenan consent to deliver the mixed fuels appellants had purchased and that those fuels were then accepted when

22.

delivered on a bill of lading. The record shows the mixed fuel products were known in the industry as transmix and possessed a potential commercial value. The record further shows that so long as the product was shipped under a bill of lading, appellants would accept the shipment because it relied on the bill of lading for this purpose and did not independently determine what was being delivered.

The trial court's analysis thus properly focused on the consent given to deliver the products ordered. While appellants' claim they would not take delivery of waste products and that any waste delivery would have been rejected, appellants make no argument, and this court sees no basis to conclude, that this assertion affects the undisputed consent given to deliver the specific mixed fuels that were ordered.

Rather, the actual consent given shows that any misrepresentation regarding the nature of the products did not go to the nature of the invasion (as delivery of the product ordered was expected) or the extent of the expected harm (as any harm would be tied to accepting mixed fuels for storage). This is not a case where the product delivered was different from that expected or the permitted entry was used to gain access to some other goal. Appellants again make no meaningful factual argument on this point and cite to no legal principles other than exceeding the scope of consent invalidates that consent. In light of the arguments appellants raise, we conclude that the undisputed consent to deliver the products ordered legally precludes a trespass claim. The trial court therefore properly granted summary judgment on this cause of action.

## DISPOSITION

The judgment is affirmed in part and reversed in part. We affirm the summary judgments granted on appellants' causes of action for negligence and trespass. We reverse the summary judgment granted on LPOD's causes of action for negligent and intentional misrepresentation. The matter is remanded for further proceedings consistent with this opinion. On remand, the trial court is not precluded from considering issues it

23.

previously deemed moot during the prior grant of summary judgment.  The parties shall bear their own costs.

LEVY, Acting P. J.

WE CONCUR:


FRANSON, J.


SMITH, J.

24.